# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**ALFONZO L. VINEYARD,**

               **Petitioner,**

**v.**

               **Case No. 22-CV-0149-JFH-SH**

**CARRIE BRIDGES, Warden,[1]**

               **Respondent.**

## OPINION AND ORDER

Petitioner Alfonzo L. Vineyard ("Vineyard"), an Oklahoma prisoner appearing pro se, seeks federal habeas relief under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2017-6196. Dkt. No. 1. Specifically, Vineyard alleges: (i) his waiver of counsel was not knowing, voluntary and intelligent; (ii) his right to confrontation was violated at his jury trial; (iii) the evidence was insufficient to convict him; (iv) the trial court erred by not instructing the jury regarding a lesser included offense; (v) cumulative errors deprived him of a fair trial; and (vi) the Oklahoma Court of Criminal Appeals ("OCCA") erred when it ruled his appellate counsel was not ineffective. Dkt. No. 1. Having considered Vineyard's Petition for Writ of Habeas Corpus ("Petition") [Dkt. No. 1], Respondent's Response in Opposition to Petition for Writ of Habeas Corpus [Dkt. No. 10], Vineyard's Reply [Dkt. No. 13], the record of state-court proceedings provided by Respondent [Dkt. Nos. 14, 15], and applicable law, the Court finds and concludes that this matter can be resolved without an evidentiary hearing and that the Petition shall be DENIED.

---

[1] Vineyard presently is incarcerated at the James Crabtree Correctional Center, and Carrie Bridges is the current warden of that facility. The Court therefore substitutes Carrie Bridges, Warden, in place of Scott Nunn as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

## BACKGROUND

On November 9, 2018, a Tulsa County jury found Vineyard guilty of Assault and Battery with a Deadly Weapon (Count 1), Possession of a Firearm After Former Conviction of a Felony (Count 2), Obstructing an Officer (Counts 3 and 6), First Degree Burglary (Count 4) and Domestic Assault and Battery (Count 7). Dkt. No. 14-12 at 32-38; *see also* Dkt. No. 1 at 1.[2] Vineyard was sentenced to life imprisonment and a $10,000.00 fine on each of Counts 1, 2 and 4, one (1) year and a $500.00 fine on each of Counts 3 and 6, and life imprisonment and a $5,000.00 fine on Count 7. Dkt. No. 14-11 at 173-176. Vineyard's sentences on Counts 1, 2 and 3 are running concurrently with each other. *Id.* His sentences on Counts 4, 6 and 7 are also running concurrently with each other, but consecutively to Counts 1, 2 and 3. *Id.*

The convictions arise from two (2) different incidents between Vineyard and his girlfriend, Tiffany Alexander ("Alexander"). The first incident was Vineyard's burglary of Alexander's apartment on August 21, 2017. The second incident was when Vineyard shot Alexander on November 27, 2017. Vineyard was originally charged for the crimes committed in August 2017 in Tulsa County Case No. CF-2017-6143. Information, *Oklahoma v. Vineyard,* CF-2017-6143 (Tulsa Cnty. Dist. Ct. November 30, 2017).[3] He was subsequently charged for the November 2017 shooting in Tulsa County Case No. CF-2017-6196. Dkt. No. 14-11 at 25-30. The counts were

---

[2] Unless otherwise indicated, the Court's citations refer to the CM/ECF pagination.

[3] The state court docket sheet for this case is available to the public through Oklahoma State Courts Network (oscn.net). "Federal courts may take judicial notice of state court docket sheets, and proceedings in other courts that have direct relation to matters in issue." *Davis v. Morgan,* Case No. 21-CV-411-GKF-JFJ, 2021 WL 6298321, at *1, n.2 (N.D. Okla. Sep. 27, 2021) (citing *Stack v. McCotter,* 79 F. App'x. 383, 391 (10th Cir. 2003), and *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

merged into one case, CF-2017-6196, by Third Amended Felony Information on November 2, 2018.  Dkt. No. 14-11 at 126-128.

At the preliminary hearing for the August 2017 crimes, Alexander testified she dated Vineyard "on and off about eight years."  Dkt. No. 14-1 at 7.  Vineyard and Alexander had one (1) child together, a daughter who was one and a half (1.5) years old.  *Id.*  In August 2017, Alexander was living at the Comanche Park Apartments in Tulsa, Oklahoma.  *Id.* at 8.  She lived with Vineyard on and off, but he was not on the lease, did not have a key and was not allowed to come and go as he pleased.  *Id.* at 9.  At the time, she and Vineyard were "together," though things were not going well.  *Id.*

On August 20, 2017, Vineyard left the apartment and then came back with "rage all over him."  *Id.* at 11.  Alexander called the police later that night, on August 21, 2017, to report Vineyard was trying to break into her house through a window.  *Id.* at 10, 12-13.  Vineyard attempted to push the window out that was right next to Alexander's locked back door.  *Id.* at 13-14.  Vineyard did not have permission to enter.  *Id.* at 14.  Alexander knew it was Vineyard because she pulled back the curtain and saw him.  *Id.*  At one point, Vineyard's hand entered the apartment and grabbed Alexander.  *Id.*  Alexander's thirteen (13) year old daughter started hitting Vineyard.  *Id.*  Alexander testified Vineyard left but came back about three (3) or four (4) times that night, repeatedly attempting to enter her apartment.  *Id.* at 15.  Alexander testified there was glass and blood on the inside of her apartment.  *Id.* at 15.  Alexander reported the events to the police.  *Id.* at 15-16.  Alexander was deemed unavailable at trial, and her preliminary hearing testimony was presented to the jury.  Dkt. No. 14-7 at 20, 33-50.

Tulsa Police Department Officer Ryan Vermeer testified at the jury trial.  *See* Dkt. No. 14-6 at 180-201.  Officer Vermeer testified he responded to Alexander's apartment around 1:00 a.m.

on August 21, 2017. *Id.* at 181-182. Photos were taken of Alexander's apartment. *Id.* at 184-186 and Dkt. No. 14-9 at 20-28. The photographs depicted boot marks on Alexander's back door, broken glass on the outside of the apartment near the back door and fresh blood. Dkt. No. 14-9 at 20-28.

Later that morning, around 5:45 a.m., Officer Vermeer returned to the Comanche Park Apartments in response to an assault in progress call. Dkt. No. 14-6 at 188-189. Officer Vermeer encountered Alexander again. *Id.* at 189. Officer Vermeer learned Vineyard had gone into the next-door neighbor's apartment. *Id.* at 190. Officers were given permission to enter the neighbor's apartment. *Id.* As they began to go upstairs and announce their presence, they heard a loud commotion. *Id.* The onlookers yelled out and said Vineyard jumped out the second story window of the neighbor's apartment. *Id.* at 190-191. Officers chased Vineyard on foot as Vineyard disobeyed Officers' commands to stop. *Id.* at 191-192. An officer eventually tackled Vineyard, and he was taken into custody. *Id.* at 191. Officer Vermeer observed "a lot of blood . . . to his hand." *Id.* at 194.

Concerning the November 2017 incident, Alexander also testified regarding this incident at the preliminary hearing. *See* Dkt. No. 14-2 at 31-41. On November 27, 2017, Alexander and Vineyard got into an argument regarding Vineyard's allegations that Alexander had a fake Facebook page. *Id.* at 34. Alexander was upset and knocked items in her apartment onto the ground. *Id.* at 34-35. When Vineyard observed this, he stated, "oh, you're that mad because you're lying to me." *Id.* at 35. She responded, "Al, if you want it to be my Facebook, it's mine . . . . leave it alone and move on." *Id.* Alexander sat down on the couch and Vineyard brandished a gun that was silver on top, with a black butt and little pink specks on it. *Id.* Alexander had seen Vineyard

with this gun before. *Id.* at 35-36. Vineyard pointed the gun at Alexander. *Id.* at 36. Alexander testified Vineyard said:

> That I was going to pay. He didn't say anything about killing me, any of that, dying or anything. And I look at him as I'm standing up. I said, "let's not do this today," you know. And I picks [sic.] up something. I hit his hand, and the gun flew.

*Id.* After the gun flew, Alexander heard a pow. *Id.* Alexander was shot. *Id.* at 36-37. Then Vineyard left the apartment without rendering aid or calling an ambulance. *Id.* at 37. Given Alexander was unavailable for trial, this testimony was also presented to the jury. Dkt. No. 14-7 at 20-33.

Additionally, Y.F., Alexander's neighbor, testified at the preliminary hearing. Dkt. No. 14-2 at 9-11. On November 27, 2017, she heard Alexander screaming "a hurtful scream." *Id.* at 12-13. Y.F. heard Alexander state she did not want to die. *Id.* at 13. Y.F. also reviewed her report to police wherein she initially stated she heard Vineyard say he was going to kill Alexander today. *Id.* at 21. Y.F. was declared unavailable, and her preliminary hearing testimony was presented to the jury. Dkt. No. 14-6 at 39-56.

The next day, November 28, 2017, law enforcement encountered Vineyard. Dkt. No. 14-6 at 150-152. After a brief standoff, Vineyard was taken into custody. *Id.* at 150-153. While in jail, Vineyard made calls to Alexander. *See e.g.* Dkt. No. 14-7 at 68-74. In the calls, Vineyard acknowledged the incident. *Id.* at 72 ("I know I fucked up by leaving your side, baby. I was scared to death."); 77-78 (Alexander stated, "I was your woman and you pulled out a pistol on me. How does that go from there?" Vineyard responded, "It's so stupid. It was so fucking stupid. I know."). Also, during these telephone calls, Vineyard begged Alexander to speak to his attorney and retract her statements. *Id.* at 84. Eventually, Alexander acquiesced and signed an affidavit stating she did

not want to go forward with the charges.  Dkt. No. 1-1 at 1-3.  It also appears Vineyard convinced

Alexander to not testify at the jury trial.  *See* Dkt. No. 14-8 at 116-117.

Prior to the jury trial, Vineyard requested to proceed pro se.  Dkt. No. 14-3 at 3.  After

conducting a hearing, the trial court granted his request and appointed his original counsel, Mr.

Rayl, to serve as stand-by counsel.  *Id.* at 16.  Vineyard represented himself at trial and, as noted

above, was convicted on six (6) counts.  Dkt. No. 14-12 at 32-38.  Subsequently, Vineyard filed a

direct appeal with the assistance of counsel.  Dkt. No. 10-1.  The OCCA affirmed his convictions

and sentences.  Dkt. No. 10-3.  Vineyard filed a pro se application for post-conviction relief [Dkt.

Nos. 10-4 and 10-5] which was denied by the district court [Dkt. No. 10-7].  Vineyard then filed a

pro se appeal of the district court's denial of his application for post-conviction relief.  Dkt. Nos.

10-8 and 10-9.  The OCCA affirmed the district court's denial of the application for post-conviction

relief.  Dkt. No. 10-10.  The instant Petition followed.  Dkt. No. 1.  Vineyard alleges fifteen (15)

Grounds for relief.  *See id.*  The Court will address each below.

## DISCUSSION

### I.   Legal Standards

A federal court has discretion to grant federal habeas relief to a prisoner who is in state

custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*,

562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal

judgment susceptible to collateral attack in the federal courts.").  But the federal habeas statutes,

as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as

interpreted by the United States Supreme Court, significantly limits a federal court's discretion to grant habeas relief to a state prisoner.

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A). When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts. But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, the reasonableness of a state court's factual determination also is measured by *Richter*'s fairminded-disagreement standard. *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017). And "if [*Richter*'s] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision. *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam). In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim *de novo*. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014).

But, even on *de novo* review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the error had a '"substantial and injurious effect or influence"' on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## II.   Ground 1:  Waiver of Right to Counsel Was Not Voluntary, Knowing or Intelligent

As mentioned, Vineyard waived his right to trial counsel. *See* Dkt. No. 14-3 at 3, 16. The trial court permitted Vineyard to proceed pro se after a hearing on the request wherein the trial court advised Vineyard against representing himself. *See id.* at 3-33. Now, Vineyard claims his waiver was not voluntary, knowing or intelligent. Dkt. No. 1 at 5. Specifically, Vineyard alleges, the "trial court failed to adequately explain the rights that he was waiving and information that was relevant to his ability to make such a waiver. [Vineyard] told judge about the breakdown in communication and of request to substitute counsel and grievance to OK. Bar Ass. This deprived [Vineyard] of right to counsel, a fair trial and reliable sentence." *Id.*

As detailed below, Vineyard raised the majority of this claim in state court. *See* Dkt. No. 10-1 at 13-18. However, Vineyard's allegation that he "told [the] judge about the breakdown in communication and of request to substitute counsel and grievance to OK Bar. Ass." was not presented to the state court and will be addressed separately.

### A.  The OCCA Decision

On direct appeal, Vineyard argued the advice from the trial court during the hearing on his request to proceed pro se "was inadequate to ensure [he] was waiving his right to counsel in a knowing and intelligent manner, specifically to the sentencing stage." Dkt. No. 10-1 at 15.

Vineyard argued he was not informed of the range of punishment for the crimes, of the allegations against him, of any possible defenses to the charges or his right to testify in his own defense. *See id.* at 16. Vineyard also asserted, "[t]he trial court failed to adequately explain the rights that he was waiving and information that was relevant to his ability to make such a waiver." *Id.* at 17.

The OCCA concluded Vineyard's Sixth Amendment right was not violated. Dkt. No. 10-3 at 3-4. Citing and applying *Faretta v. California,* 422 U.S. 806 (1975), the OCCA concluded, "[t]he record established that Vineyard was adequately advised of both general and specific dangers, disadvantages, and pitfalls of self-representation. Vineyard's waiver of his right to counsel was knowing, intelligent, and voluntary and the trial court's ruling on Vineyard's request to represent himself was not an abuse of discretion. Relief is not required." Dkt. No. 10-3 at 4.

### B. Analysis and Conclusion

The Sixth Amendment of the United States "grants to the accused personally the right to make his defense." *Faretta*, 422 U.S. at 819. "[I]n order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Id.* at 835 (internal quotation and citation omitted). An accused electing to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (internal quotation and citation omitted).

Whether the waiver is knowing and voluntary hinges on the defendant's understanding of the significance and consequences of his decision, as well as whether the decision was coerced. *Maynard v. Boone*, 468 F.3d 665, 677 (10th Cir. 2006). "In this context, knowing and intelligent means only that he was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards. The trial court's obligation is to impart enough information to the defendant so that the defendant can make a fully informed choice." *United*

*States v. Turner*, 287 F.3d 980, 984 (10th Cir. 2002).  In determining whether a defendant knowingly and intelligently waived his right to counsel, "we must consider the total circumstances of the individual case including background, experience and the conduct of the accused person." *United States v. Padilla*, 819 F.2d 952, 958 (10th Cir. 1987) (internal quotation and citation omitted).

The OCCA correctly identified *Faretta* as governing the analysis.  *See* Dkt. No. 10-3 at 4. Therefore, Vineyard must establish the OCCA unreasonably applied *Faretta* to the facts of his case.  *Pinholster*, 536 U.S. at 182.  Vineyard has not carried his burden.

Upon receiving Vineyard's oral request to represent himself, the district court conducted a hearing.  *See* Dkt. No. 14-3 at 3.  At the hearing, the trial court explained to Vineyard he did not have the training and experience a lawyer does [*id.* at 4], that he would be held to the same standard as an attorney and would need to know the rules of evidence [*id.* at 14], was waiving any claim to ineffective assistance of trial counsel [*id.* at 15], he was likely facing life in prison [*id.* at 16], the trial court warned Vineyard he thought Vineyard was making a mistake [*id.* at 29], his minimum sentence given his prior convictions was twenty (20) years [*id.* at 31], the trial court explained the possibility of sentences running concurrently or consecutively [*id.* at 31-32] and the trial court advised Vineyard he would allow him the opportunity to withdraw his decision to represent himself at the next setting [*id.* at 32-33].  Vineyard remained adamant that he understood, and he did not want his appointed counsel representing him.  *See id.* at 6 ("I know my rights.  I just don't want him.  I understand what you're saying."), 11 ("That's why I don't want him to represent me anymore."), 12 ("I just don't want him on my case because he's not going to defend me properly."), 13 ("I don't want him to represent me because he don't have my best interest."), 14 ("I'd rather

represent myself than have him; that's what I'm saying."), 15 ("I'm not going to trial with him."),

29 ("I understand, Your Honor."). The trial court advised:

> The Court: … you're probably going to prison the rest of your life.
> Vineyard: I understand.
> Trial Court: And you want to do that on your own without the lawyer next to you?
> Vineyard: Nobody care about my life more than I do, so I'm fine with it.

*Id.* at 17. Ultimately, the trial court appointed Vineyard's original counsel as advisory counsel. *Id.*

Furthermore, at the time of his request to proceed pro se, Vineyard had many prior convictions.

*See id.* at 11 ("I can tell the Court that in the preliminary hearing transcripts, the victim testified

that he shot her with a gun that he's not allowed to have with his 15 priors."); *see also* Dkt. No.

14-2 at 5-6. Therefore, Vineyard's background and experience support the conclusion that

Vineyard understood the disadvantages of representing himself.

The trial court's inquiry into Vineyard's decision to waive counsel and proceed pro se was

adequate under *Faretta*. Although the trial court did not go charge by charge through the

Information and possible sentences, the trial court made clear Vineyard faced seven (7) charges

[*id.* at 32], his minimum sentence if convicted would be twenty (20) years [*id.* at 31] and he was

likely facing life in prison [*id.* at 31-32]. The trial court even left open the door for Vineyard to

withdraw his decision later. *Id.* at 32-33. Vineyard was "reasonably informed by the court of the

hazards of self-representation and had sufficient understanding of those hazards." *Turner*, 287

F.3d at 984. The record reflects Vineyard's decision to waive his right to counsel and exercise his

right to self-representation was knowingly, intelligently, and voluntarily made. Vineyard has not

demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court," or was

"based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C.

§ 2254(d). Therefore, Vineyard's request for habeas corpus relief on this claim is denied.

### C. Breakdown in communication and substitution of counsel

As noted above, to the extent Vineyard's claim is premised upon the allegation that he informed the trial court about his "breakdown in communication and of request to substitute counsel and grievance to OK. Bar Ass.," this particular claim was not fairly presented to the state court in his direct appeal or his application for post-conviction relief. *See* Dkt. Nos. 10-1 at 13-18, 10-4, 10-5 and 10-8; *see also Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009). Further, the OCCA would apply a procedural bar if Vineyard were to return to state court to exhaust this claim through an application for post-conviction relief because he could have, but did not, raise this claim in his initial application for post-conviction relief. *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999). Vineyard does not demonstrate why this Court should review his procedurally barred claim. *Grant v. Royal,* 886 F.3d 874, 892 (10th Cir. 2018). Therefore, Vineyard has not overcome the procedural bar, and habeas relief as to this claim is denied.

### III. Ground 2: Violation of Confrontation Clause

Next, Vineyard claims that his Sixth Amendment right to confrontation was violated because the alleged victim, Alexander, was not unavailable rendering it error for her preliminary hearing testimony to be admitted at trial. Dkt. No. 1 at 7. Specifically, Vineyard contends the state did not "exercise[] good faith and due diligence" to secure Alexander's presence at trial. *Id.*

### A. The OCCA's Decision

Vineyard objected to the trial court's conclusion that Alexander was unavailable at trial preserving the issue for appeal. Dkt. No. 10-3 at 5. Vineyard also presented this claim on direct appeal. Dkt. No. 10-1 at 19-25. Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), *Barber*

*v. Page*, 390 U.S. 719 (1968), *Ohio v. Roberts*, 448 U.S. 56 (1980) and *Hardy v. Cross*, 565 U.S. 65 (2011), the OCCA rejected Vineyard's claim and explained:

> Prior to trial the State filed a motion to declare [the] witness unavailable and use transcript at jury trial. A hearing was held on the State's motion on the first day of trial. At this hearing several witnesses testified about attempts made to locate the victim to secure her testimony at trial. At the close of this hearing the trial court found that the State had presented sufficient evidence to support a finding, under Section 2804, that the victim was unavailable. Indeed, the detailed evidence presented by the State regarding its attempts to locate the victim prior to trial was more than adequate to support the trial court's findings regarding the victim's unavailability and the State's due diligence. Vineyard has suffered no violation of his Sixth Amendment right to confrontation by the admission of the victim's preliminary hearing testimony; she was properly found to be unavailable at trial and she had been subject to cross-examination at preliminary hearing. Relief is not required.

Dkt. No. 10-3 at 7.

### B. Analysis and Conclusion

The *Crawford* Court held that the Confrontation Clause prohibits admission of testimonial hearsay, unless the declarant is unavailable and there was a prior opportunity for cross-examination. 541 U.S. at 68. A witness is not unavailable for purposes of confrontation "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber*, 390 U.S. at 724-25. "The lengths to which the prosecution must go to produce a witness … is a question of reasonableness." *Roberts*, 448 U.S. at 74 (internal quotation and citation omitted). "[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence . . . but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy*, 565 U.S. at 71-72.

The OCCA correctly identified *Crawford* and *Barber* as governing the analysis. *See* Dkt. No. 10-3 at 7. Therefore, Vineyard must establish the OCCA unreasonably applied *Crawford* and *Barber* to the facts of his case. *Pinholster*, 536 U.S. at 182. Vineyard has not carried his burden.

Prior to the jury trial, the trial court held a hearing concerning the state's motion to declare witness unavailable and use the preliminary hearing transcript at trial. Dkt. No. 14-4 at 16. At the hearing, the state offered the testimony of Clarence Morrill ("Morrill"), a State of Oklahoma investigator employed with the Tulsa County District Attorney's Office. *Id.* at 16-17. Morrill testified he went to two (2) different addresses associated with Alexander to locater her: (1) an apartment he believed to be her residence; and (2) her mother's home. *See id.* at 18-19, 22. He went to the apartments twice and eventually ascertained she no longer lived there. *See id.* at 18-19, 24-25. Morrill went to Alexander's mother's home three (3) times and encountered Alexander's mother, Maryum Alexander ("Maryum"), on the third visit. *Id.* at 22. He communicated to Maryum the purpose of his visit and that he had a subpoena for Alexander's appearance at trial. *Id.* at 22-23. Maryum then, in Morrill's presence, called her other daughter, Aliyah Alexander ("Aliyah"), who indicated she was with Alexander. *Id.* at 23. Maryum communicated the information from Morrill to Aliyah. *Id.* Morrill left the subpoena with Maryum along with the prosecutor's business card. *Id.* at 24.

Maryum testified she did not have a working phone number for Alexander. *Id.* at 28-29. After Maryum Alexander received the subpoenas from Morrill, Maryum attempted unsuccessfully to contact Alexander by calling Aliyah and leaving messages on phone numbers Alexander had called her from. *Id.* at 30-32. Maryum testified Alexander has not been to her home since the investigator came with the subpoenas. *Id.* at 31.

Finally, Annalisa Muehlberg ("Muehlberg"), a victim witness advocate/coordinator for the Tulsa County District Attorney's office testified. *Id.* at 37. She testified she attempted to contact Alexander using three (3) different phone numbers and was unsuccessful. *Id.* at 38-39. Alexander did not return any of Muehlberg's calls. *Id.* at 39. Based upon these witnesses' testimony, the trial court concluded there was sufficient evidence to determine Alexander was unavailable and to receive the preliminary hearing transcript into evidence at the jury trial. *Id.* at 56.

The record reveals the prosecution made a good faith effort to locate Alexander as established by Morrill, Maryum and Muehlberg's testimony. Additionally, the steps the prosecution undertook were reasonable under the circumstances. Therefore, Alexander was appropriately classified as unavailable. Further, her preliminary hearing testimony was subject to cross examination. *See* Dkt. Nos. 14-1 at 16-18 and 14-2 at 40-41. In conformity with *Crawford,* it was appropriate for Alexander's preliminary hearing testimony to be read to the jury. Vineyard fails to demonstrate the OCCA's identical determination was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Vineyard's request for habeas corpus relief on this claim is denied.

## IV.    Ground 3: Insufficient Evidence

Next, Vineyard asserts "the state's evidence presented at trial was insufficient to show beyond a reasonable doubt that [Vineyard] committed the crime of assault and battery with a deadly weapon." Dkt. No. 1 at 8. Vineyard elaborates,

> Alleged victim claimed she hit [Vineyard's] hand and the gun flew and she heard a pow. Even viewed in light most favorable to the state[,] the stat[e] failed to prove the shooting was willful[] as required for there to be a battery. The state failed to establish beyond a reasonable doubt that the act of shooting alleged victim was willful if it had happened at all. Without this showing the state could not meet its burden as to each and every element of assault and battery with a deadly weapon.

*Id.*

### A. The OCCA Decision

On direct appeal, the OCCA considered Vineyard's Ground 3 and concluded:

This Court reviews challenges to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged to exist beyond a reasonable doubt. *See Logsdon v. State*, 2010 OK CR 7, ¶ 5, 231 P.3d 1156, 1161; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. In evaluating the evidence presented at trial, we accept the fact-finder's resolution of conflicting evidence as long as it is within the bounds of reason. *See Day v. State*, 2013 OK CR 8, ¶ 13, 303 P.3d 291, 298. This Court also accepts all reasonable inferences and credibility choices that tend to support the verdict. *See Coddington v. State*, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456. The State proved each element of the crime of assault and battery with a deadly weapon beyond a reasonable doubt. This proposition is without merit.

Dkt. No. 10-3 at 8.

### B. Analysis and Application

The Fourteenth Amendment's due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). When applying the *Jackson* standard, a federal court first looks to state law to determine the essential elements of the crime and then whether the evidence suffices to establish each element. *Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021). In doing so, the federal court, like the jury, may rely on circumstantial evidence. *See United States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015) (explaining that the government may rely on

circumstantial evidence to meet its burden to prove guilt beyond a reasonable doubt and stating

that "[c]ircumstantial evidence alone may permissibly support a jury's guilty verdict").

Notably, "*Jackson* claims face a high bar in federal habeas proceedings because they are

subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide
> what conclusions should be drawn from evidence admitted at trial. A reviewing
> court may set aside the jury's verdict on the ground of insufficient evidence only if
> no rational trier of fact could have agreed with the jury. [...] And second, on habeas
> review, a federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal court disagrees
> with the state court. The federal court instead may do so only if the state court
> decision was "objectively unreasonable."

*Id.* (internal quotations and citations omitted).

First, the OCCA correctly identified the governing legal principle from *Jackson.* Dkt. 10-

3 at 8. The OCCA cited its own decision for the propositions that challenges to the sufficiency of

the evidence are viewed in the light most favorable to the state and the verdict will not be disturbed

if any rational trier of fact could have found the essential elements of the crime charged to exist

beyond a reasonable doubt. *Id.* (citing *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla Crim. App.

1985) (acknowledging the sufficiency of the evidence claims should be evaluated under *Jackson*));

*see also Bland*, 459 F.3d at 1024 (noting since the standard applied by the state court was the same

as that under federal law, the AEDPA deferential standard of review was applicable).

*Jackson* also requires a reviewing court to determine "whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. To obtain

a conviction for assault and battery with a deadly weapon, the state had to prove: (1) an assault

and battery; (2) upon another person; and (3) with a deadly weapon. Okla. Stat. tit. 21, § 652(C).

An assault is "any willful and unlawful attempt or offer to do a bodily hurt to another with force

or violence." Okla. Stat. tit. 21, § 641. A battery is "any willful and unlawful use of force or violence upon the person of another." Okla. Stat. tit. 21, § 642. Oklahoma law defines willfully as "simply a purpose or willingness to commit the act … referred to." Okla. Stat. tit. 21, § 92. Applying the *Jackson* standard, the OCCA determined that a rational jury could have found, beyond a reasonable doubt, that an assault and battery with a deadly weapon was committed. Dkt. No. 10-3 at 8. Thus, to prevail on his claim Vineyard must demonstrate the OCCA's decision is contrary to clearly established federal law or an unreasonable determination of the facts.

The evidence presented at trial established Vineyard and Alexander got into an argument. Dkt. No. 14-7 at 26-27. During this argument, Vineyard brandished a gun that was silver on top, with a black butt and little pink specks on it. *Id.* at 28. Alexander had seen Vineyard with this gun before. *Id.* Vineyard pointed the gun at Alexander. *Id.* Alexander testified Vineyard said:

> That I was going to pay. He didn't say anything about killing me, any of that, dying or anything. And I look at him as I'm standing up. I said, let's not do this today, you know. And I picks [sic.] up something. I hit his hand, and the gun flew.

*Id.* After the gun flew, Alexander heard a pow. *Id.* at 28-29. Alexander was shot. *Id.* at 29. Then Vineyard left the apartment. *Id.*

Additionally, Y.F. testified she heard Alexander screaming "a hurtful scream" and heard Alexander state she did not want to die. Dkt. No. 14-6 at 47. Y.F. also reviewed her report to police wherein she initially stated she heard Vineyard state he was going to kill her today. *Id.* at 54. The jury was instructed regarding the elements necessary to convict Vineyard with assault and battery with a deadly weapon. Dkt. No. 14-12 at 62, 68-69. Also, while detained pretrial, Vineyard made numerous incriminating statements during phone calls with Alexander and others. *See e.g.* Dkt. No. 14-7 at 72, 77-78.

Viewing the evidence in the light most favorable to the state, the Court finds that a rational juror, properly instructed on the law of assault and battery with a deadly weapon, could have found Vineyard guilty, beyond a reasonable doubt, of assault and battery with a deadly weapon. The testimony that Vineyard pointed a gun at Alexander and told her she was going to pay coupled with the resulting gunshot wound was sufficient evidence for the jury to conclude Vineyard willfully assaulted and battered Alexander. Vineyard has not shown that the OCCA applied *Jackson* to the facts of the case in an objectively unreasonable manner, or that the OCCA based its decision on an unreasonable determination of the facts presented in state court. Vineyard's request for habeas corpus relief on this claim is denied.

**V.     Ground 4:  Lesser Included Offense Instruction**

For his fourth claim, Vineyard asserts, "[t]he trial court erred when it failed to instruct the jury as to the lesser offense of pointing a firearm, thereby violating [Vineyard's] due process rights under the 14th Amendment of the U.S. Const." Dkt. No. 1 at 10. Vineyard further alleges,

> Seeming to recognize this issue the state told the court "the state would ask for a bind over on feloniously pointing as there is sufficient evidence for that charge. The evidence presented at trial constituted prima facie case of pointing a firearm and the trial court abused its discretion when it failed to properly instruct the jury of the lesser charge. This failure deprived [Vineyard] of right to due process of law and a fair trial.

*Id.*

This claim fails. The Tenth Circuit has repeatedly held that "there is no federal constitutional right to a lesser included offense instruction in a non-capital case." *Dewberry v. Patton*, 672 F. App'x 821, 823 (10th Cir. 2016) (unpublished)[4] (citing *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004)). The Tenth Circuit applies a rule of "automatic non-reviewability" to

---

[4]  The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

"claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins*, 374 F.3d at 938. Therefore, Vineyard has failed to assert a cognizable claim for habeas relief on this basis. *Dewberry*, 672 F. App'x at 823.

## VI.    Ground 5:  Cumulative Errors

Next, Vineyard alleges, "cumulative errors deprived [Vineyard] of a fair proceeding and reliable outcome the errors in this case, taken together deprived [Vineyard] of a fair trial." Dkt. No. 1 at 11.  Vineyard raised this claim on direct appeal, and it was rejected by the OCCA.  *See* Dkt. No. 10-3 at 12.

### A.   The OCCA Decision

In rejecting Vineyard's cumulative error claim, the OCCA explained:

> Cumulative error does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding.  *Baird v. State*, 2017 OK CR 16, ¶ 42, 400 P.3d 875, 886.  A cumulative error claim is baseless when this Court fails to sustain any of the alleged errors raised on appeal. *Id.*  There were no errors which, considered either individually or cumulatively, can be found to have deprived [Vineyard] of a fair trial.  This claim is denied.

*Id.*

### B.   Analysis and Conclusion

Habeas "petitioners are entitled to 'relief under [the] cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'"  *Andrew v. White*, 62 F.4th 1299, 1351 (10th Cir. 2023) (quoting *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013)), *cert. granted, judgment vacated on other grounds* 145 S. Ct. 75 (2025).  To analyze a cumulative-error claim, a reviewing court "aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Simpson v. Carpenter*, 912 F.3d 542, 602 (10th Cir. 2018) (quoting *United States v. Toles*, 297 F.3d

959, 972 (10th Cir. 2002)).  But "[o]nly actual constitutional errors are considered when reviewing a case for cumulative error."  *Id*.  As detailed above and below, Vineyard has not established the existence of any constitutional errors.  Therefore, no reasonable jurist could conclude the OCCA's rejection of the claim was contrary to or an unreasonable application of clearly established federal law.  *See Wyatt v. Crow*, 812 F. App'x 764, 770 (10th Cir. 2020).  Nor has Vineyard demonstrated the OCCA's decision rested on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Vineyard's request for habeas corpus relief on this claim is denied.

## VII.    Grounds 6 – 15:  Ineffective Assistance of Appellate Counsel

The remainder of Vineyard's Petition challenges the OCCA's adjudication of the claims he raised in his application for post-conviction relief.  Vineyard asserted nine (9) instances of ineffective assistance of appellate counsel in his application for post-conviction relief.  *See* Dkt. No. 10-5 at 4-10.  The state district court considered these nine (9) claims and rejected them all.  *See* Dkt. No. 10-7.  Vineyard appealed the state district court's denial of his application for post-conviction relief [Dkt. No. 10-8] and the OCCA affirmed the state district court's denial of the application [Dkt. No. 10-10].

Vineyard alleges the following specific bases for habeas relief:

6.   Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of plain error where trial court disclosed prior conviction during *voir dire*/ 1st stage of trial.  During *voir dire* and jury instructions/ 1st stage of trial, trial court disclosed prior conviction to jury even though [Vineyard] did not take the stand.  See TTR Exhibit D.

7.   Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of plain error where preliminary transcript of absent witness Y.F. testimony was read into the record in violation of [Vineyard's] 6th amendment right to confrontation and 14th amendment right.   See Exhibit E.  …

8.   Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of plain error where preliminary transcripts of absent

witness Dorshell Fletchers [sic.] testimony was read into the record over objection in violation of [Vineyard's] 6th amendment right to confrontation as well as 14th amendment right. …

9.  Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of Brady violation where affidavits of alleged victim stating "I do not want to go through with the charges," were suppressed in bad faith in violation of [Vineyard's] 5th, 6th and 14th amendment rights. …

10. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of Brady violation by not disclosing to jury, jail calls and video calls that were exculpatory and material. In violation of [Vineyard's] 5th, 6th and 14th amendment rights.

11. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failure to raise the claim of judicial misconduct for giving inapplicable jury instructions in violation of [Vineyard's] 5th, 6th, 8th and 14th amendment rights. See jury instructions #18, #21, #18 Exhibit H.

12. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of prejudicial error where judge denied [Vineyard's] oral motion for substitution of counsel after conflict established, in violation of [Vineyard's] 6th and 14th amendment rights. …

13. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of prejudicial error where jury was allowed to hear unauthenticated phone conversations where alleged victim was only identified by the state, as speaker, in violation of [Vineyard's] 5th, 6th, and 14th Amendment Rights. …

14. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of vindictive prosecution where the state added a charge and increased the severity in another after [Vineyard] asserted his protected right, in violation of [Vineyard's] 5th, 8th and 14th Amendment Rights. …

15. Okla. Crim. C. A. erred in ruling appellate counsel not ineffective for failing to raise the claim of prosecutorial misconduct. ….

Dkt. No. 1 at 11-14.

**A. The OCCA's Decision**

In rejecting Vineyard's claims 6-14, the OCCA reasoned:

[Vineyard's] remaining nine claims of error assert appellate counsel was ineffective for failing to raise various claims on direct appeal. Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue. As set forth in *Logan v. State*, 2013 OK CR 2, ¶ 5, 233 P.3d 969, 973, post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel."). Under *Strickland*, a petitioner must show both: (1) deficient performance, by demonstrating his counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89. And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

We set forth in *Logan* that in reviewing a claim of ineffective assistance of appellate counsel under *Strickland*, a court must look to the merits of the issues that appellate counsel failed to raise. *Logan*, 2013 OK CR 2, ¶¶ 5-7, 293 P.3d at 973-74. Only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient and also whether the failure to raise the omitted issue on appeal prejudiced the defendant; i.e., whether there is a reasonable probability that raising the omitted issue would have resulted in a different outcome in the defendant's direct appeal. *Id.*

We find no merit in the claim that [Vineyard] was denied effective assistance of appellate counsel as alleged in his post-conviction application. The Post-Conviction Procedure Act is not a substitute for a direct appeal, nor is it intended as a means of providing a petitioner with a second direct appeal. *Fowler v. State*, 1995 OK CR 29, ¶ 2, 896 P.2d 566;569; *Maines v. State*, 1979 OK CR 71, ¶ 4, 597 P.2d 774, 775-76.

Dkt. No. 10-10 at 3-5.

### B.  Analysis and Conclusion

The OCCA correctly identified the *Strickland* test. *See id.*; *see also Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005) (noting *Strickland* is the appropriate test to apply to an ineffective assistance of appellate counsel claim). The OCCA then determined Vineyard's claims were meritless. *See* Dkt. No. 10-10 at 3-5.

Thus, Vineyard must establish the OCCA unreasonably applied *Strickland*. *See Upchurch v. Bruce*, 333 F.3d 1158, 1167 (10th Cir. 2003). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." *Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (citation omitted). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" *Id.* (citation omitted).

As outlined below, after reviewing the record and the merits of the omitted claims, Vineyard cannot demonstrate his appellate counsel's performance was deficient. Nor can Vineyard demonstrate the result of his appeal would have been different had the omitted claims been included. Therefore, the OCCA's decision was not an unreasonable application of *Strickland* nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### i.   Disclosure of Prior Conviction (Ground 6)

As noted by Respondent, the only mention of Vineyard's prior convictions was during *voir dire* of prospective jurors and prior to opening statements. Dkt. No. 14-4 at 85 and 14-6 at 16. Specifically, while informing the jury of the charges in the Information, the trial court stated:

> In this case, the State has filed an Information. In that Information, the Defendant has been charged in Count A with assault and battery with a deadly weapon, in Count B, with obstructing an officer, in Count C with burglary in the first degree, in Count D with assault and battery, in Count E, obstructing an officer, in Count F, domestic assault and battery, **second offense**.

Dkt. No. 14-4 at 85 (emphasis added). The trial court similarly advised the jury of the charges prior to opening statements. *See* Dkt. No. 14-6 at 16 ("in Count F, domestic assault and battery,

25

second offense."). Vineyard did not object to either mention of the "second offense." *See* Dkt. No. 14-4 at 85 and 14-6 at 16. Therefore, if the claim had been raised on direct appeal, it would have been reviewed for plain error. *Eizember v. State*, 164 P.3d 208, 233 (Okla. Crim. App. 2007) ("In the absence of any objection from the defense we review for plain error only[.]").

The state presented sufficient evidence of Vineyard's crimes against Alexander to support the conviction of domestic assault and battery. *See* Dkt. No. 14-7 at 23-43. Beyond the two passing, vague references to "second offense," the jury was not informed of the prior domestic conviction until the second stage of the trial. Dkt. No. 14-8 at 85, 92-93. The jury was uninformed of his other prior convictions until the third stage. *Id.* at 101-114. Considering the record as a whole, the Court cannot conclude had appellate counsel included this claim in Vineyard's direct appeal, Vineyard would have received relief. Therefore, Vineyard cannot establish the prejudice prong of *Strickland* and cannot demonstrate the OCCA's determination was unreasonable. Vineyard's request for habeas corpus relief on this claim is denied.

### ii. Admission of Witnesses' Preliminary Hearing Testimony (Grounds 7 and 8)

Next, Vineyard contends his Sixth Amendment and Fourteenth Amendment rights were violated based upon the admission of Y.F. and Dorshell Fletcher's preliminary hearing testimony. Dkt. No. 1 at 11. As noted above, to introduce a witness' prior testimony, the state must establish the witness is unavailable and the state exercised a reasonable, good faith effort to obtain the witness' presence at trial. *Barber*, 390 U.S. at 724-25. The record supports the trial court's conclusion that Y.F. and Dorshell Fletcher were unavailable. According to Morrill's testimony, Y.F. was served through her mother and the district court was unwilling to issue a material witness warrant for a minor. Dkt. No. 14-4 at 20-22, 53, 58. Morrill also testified he personally served Dorshell Fletcher with a trial subpoena and she did not appear. *Id.* at 19. A material witness

warrant was issued to secure her testimony.  Dkt. No. 14-12 at 118-119.  Nevertheless, the state was unable to obtain Dorshell Fletcher's presence at the trial.  Dkt. No. 14-6 at 56-57.

The record establishes the prosecution made a good faith effort to locate Y.F. and Dorshell Fletcher as established by Morrill's testimony.  The steps the prosecution undertook were reasonable under the circumstances.  Therefore, these witnesses were appropriately classified as unavailable, and Vineyard had a prior opportunity to cross-examine these witnesses.  *See* Dkt. No. 14-2 at 22, 29.  Thus, the admission of their preliminary hearing testimony at trial was appropriate under the circumstances.  Vineyard cannot establish his appellate counsel's performance was deficient for failing to raise this issue on direct appeal.  *Smith*, 550 F.3d at 1268 ("counsel need not raise meritless issues.").  Nor can Vineyard establish the result of his direct appeal would have been different had these claims been raised.  It follows, Vineyard has failed to demonstrate the OCCA unreasonably applied *Strickland* or unreasonably determined the facts.  Vineyard's request for habeas corpus relief on these claims is denied.

### iii.    Brady Violations (Grounds 9 and 10)

Vineyard also contends there were two (2) *Brady* violations, and his appellate counsel was ineffective for not raising these instances on direct appeal.  Dkt. No. 1 at 12.  First, Vineyard complains Alexander's affidavit wherein she stated she did not "wish to go through with the charges" was suppressed in bad faith.  *Id.*  Vineyard contends:

> Had the jury known the alleged victim did not wish to go through with the charge[]s months before the trial, witnessed by the public defender's office: signed, dated and notarized, it would explain why not only alleged victim, but [Y.F.] and Dorshell Fletcher were not present at trial, it raises reasonable doubt if not convince jury of [Vineyard's] innocent [sic].

*Id.*  He also alleges it was a *Brady* violation because the state did "not disclos[e] to the jury, jail calls and video calls that were exculpatory and material."  *Id.*  Vineyard explains:

> Prosecutor listened to all of [Vineyard's] jail calls. Not only did the state not authenticate them before putting them before the jury as evidence, but purposely excluded jail phone and video calls between [Vineyard] and the alleged victim that were favorable and material to [Vineyard's] defense like the video where alleged victim told [Vineyard] after meeting with public defender and filing of affidavits that [Vineyard] would be home soon. The judge and jury should have heard those calls and seen the video calls since the prosecutor has a duty to disclose favorable evidence regardless of request.

*Id.*

Vineyard cannot demonstrate his appellate counsel's performance was deficient. "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). The evidence Vineyard identifies was in his possession and/or known to him; there was no failure to disclose by the state. First, the affidavit was procured by the defense and Vineyard had it in his possession. Dkt. No. 14-3 at 27-28. Also, Vineyard was a party to the jail calls and was given an opportunity to listen to them before trial. *See id.* at 9-10, *see also* Dkt. No. 10-3 at 19-23. It is clear the evidence was not "suppressed" and there were no *Brady* violations. Vineyard's appellate counsel was not deficient for failing to raise these claims. Therefore, Vineyard cannot satisfy *Strickland* and cannot demonstrate the OCCA's rejection of these claims was unreasonable. Vineyard's request for habeas corpus relief on these claims is denied.

### iv.    Jury Instructions (Ground 11)

For his eleventh ground for habeas relief, Vineyard claims his appellate counsel was ineffective for failing to raise "judicial misconduct for giving inapplicable jury instructions[.]" Dkt. No. 1 at 12. Specifically, Vineyard claims the trial court engaged in "judicial misconduct"

for giving the jury Instruction Nos. 18, 21 and 28.[5]  Dkt. Nos. 1 at 12 and 1-1 at 11-13.  The Court

will address each instruction in turn.

First, Instruction No. 18 provided:

The defendant is not compelled to testify, and the fact that a defendant does not testify cannot be used as an inference of guilt and should not prejudice him in any way.  You must not permit that fact to weigh in the slightest degree against the defendant, nor should this fact enter into your discussions or deliberations in any manner.

Dkt. No. 14-12 at 59.  The Supreme Court has expressly blessed such an instruction.  *See Lakeside*

*v. Oregon,* 435 U.S. 333, 339 (1978).  The *Lakeside* Court reasoned, such an instruction's "very

purpose is to remove from the jury's deliberations any influence of unspoken adverse inferences.

It would be strange indeed to conclude that this cautionary instruction violates the very

constitutional provision it is intended to protect."  *Id.*  It follows, Vineyard's appellate counsel was

not deficient for failing to raise this claim.  Vineyard cannot satisfy *Strickland* and cannot

demonstrate the OCCA's rejection of this claim was unreasonable.

Second, Instruction No. 21 provided:

No person may be convicted of ASSAULT AND BATTERY WITH A DEADLY WEAPON in count A, unless the State has proved beyond a reasonable doubt each element of the crime.  These elements are:

First, an assault and battery;
Second, upon another person; and
Third, with a deadly weapon.

Dkt. No. 14-12 at 62.  Vineyard does not articulate why this instruction was erroneous.  *See* Dkt.

No. 1 at 12.  In his application for post-conviction relief, he claimed the instruction "gives the

wrong elements for 21 O.S., 652(C) is prejudicial and inapplicable."  Dkt. No. 10-5 at 7.  The

---

[5]  Vineyard alleges "instructions #18, #21, #18" were improperly given.  Dkt. No. 1 at 12.  However, he provided Instruction Nos. 18, 21 and 28.  Dkt. No. 1-1 at 11-13.  Therefore, the Court interprets Vineyard's claim to take issue with instructions 18, 21 and 28.

Court disagrees.   Oklahoma law provides, "[a]ny person who commits any assault and battery upon another . . . by means of any deadly weapon . . . shall be guilty of a felony[.]"  Okla. Stat. tit. 21, § 652(C).   Therefore, Vineyard's appellate counsel was not deficient for failing to raise this claim, Vineyard cannot satisfy *Strickland* and has failed to establish the OCCA's rejection of this claim was unreasonable.

Third, Instruction No. 28 provided:

Evidence has been introduced of the defendant's departure on or about 11/27/17, shortly after the alleged crime was committed.  You must first determine whether this action by the defendant constituted flight.

The term "flight," as is used in this instruction, means more than departure or concealment.  To be in flight, a defendant must have departed with a consciousness of guilt in order to avoid arrest.

The defendant has offered evidence explaining his acts.  You must consider the claim of the defendant in determining if flight occurred.

To find the defendant was in flight you must find beyond a reasonable doubt that:

<u>First</u>, the defendant departed,
<u>Second</u>, with a consciousness of guilt,
<u>Third</u>, in order to avoid arrest for the crime with which he is charged.

If after consideration of all the evidence on the issue, you find beyond a reasonable doubt that the defendant was in flight, then this flight is a circumstance which you may consider with all the other evidence in this case in determining the question of the defendant's guilt.  However, if you have a reasonable doubt that defendant was in flight, then the fact of any departure is not a circumstance for you to consider.

Dkt. No. 14-12 at 70.   Vineyard claimed in his application for post-conviction relief that this instruction was "prejudicial, inapplicable and misleading to a jury."  Dkt. No. 10-5 at 7.  Vineyard did object to this instruction at trial.  Dkt. No. 14-7 at 127.  Therefore, had this claim been raised on direct appeal, the OCCA would have reviewed for abuse of discretion.  *Newman v. State*, 466 P.3d 574, 581 (Okla. Crim. App. 2020) ("This Court normally reviews a trial court's choice of jury instructions for an abuse of discretion.").

When evaluating this claim, the district court concluded, "[t]he evidence at trial very clearly showed that [Vineyard] left the scene after shooting Tiffany Alexander and concealed himself inside a neighbor's residence, where he had a standoff with police. *See T. Tr., Vol. III,* pp. 132-144. The facts set before the jury clearly supported the giving of this instruction." Dkt. No. 10-7 at 15. The OCCA affirmed this conclusion. Dkt. No. 10-10 at 3-5.

The OCCA has recognized, "[i]n cases where a defendant places himself at the scene of the crime and departs from the scene the instruction may be appropriate." *Williamson v. State*, 422 P.3d 752, 762 (Okla. Crim. App. 2018). Here, through the jail calls introduced at trial, Vineyard placed himself at the scene of the crime and explained his departure. In one call, Vineyard stated:

> We got into an argument and she grabbed me, you know what I'm saying? It could have been any one of us. And, I mean, I wish it would have been me, you know what I'm saying? It hit and it went off. You know what I'm saying? It just happened. And you know it could be any one of us.
>
> I - I - **I didn't want to leave**, you know what I'm saying? If it would have been fatal - - **if it would have been fatal, I would have stayed right there** and I would have gave up my life for that.

Dkt. No. 14-7 at 66-78 (emphasis added). In another phone call, Vineyard stated, "I know I fucked up **by leaving your side**, baby. **I was scared to death**." *Id.* at 72 (emphasis added). Dorshell Fletcher testified Vineyard left Alexander's apartment out the back door. Dkt. No. 14-6 at 62. Alexander testified Vineyard left after pointing the gun at himself. Dkt. No. 14-7 at 29. Officer Vermeer also testified regarding the subsequent standoff with police. Dkt. No. 14-6 at 150-153.

Based upon this evidence, the instruction was warranted. As a result, Vineyard's appellate counsel's performance was not deficient for failing to raise this claim on direct appeal, Vineyard cannot satisfy the *Strickland* test and Vineyard failed to establish the OCCA's rejection of this claim was unreasonable. Vineyard's request for habeas corpus relief on this claim is denied.

### v.    Denial of Motion to Substitute Counsel (Ground 12)

Vineyard also asserts it was error for the trial court to deny his oral motion for substitution of counsel and appellate counsel's failure to raise this issue on direct appeal constituted ineffective assistance of counsel.  Dkt. No. 1 at 13.  Vineyard states:

> [Vineyard] asked the judge in open court to appoint new counsel and made known to the judge the repeated request to public defender[']s office to substitute counsel and grievance to the Oklahoma Bar Association.  The judge refused to appoint new counsel forcing [Vineyard] to either represent himself or go to trial with counsel who did not have his best interest at heart.

*Id.*

As the district court acknowledged, Vineyard's claim is not supported by the record.  *See* Dkt. No. 10-7 at 16.  Vineyard never requested substitute counsel.  At the hearing on Vineyard's oral request to represent himself, he stated, "I've been trying to go through the proper channel, but I'd rather represent myself than have him; that's what I'm saying." Dkt. No. 14-3 at 14.  Later, the following exchange occurred after the trial court announced he would appoint Vineyard's original, appointed counsel as stand-by counsel:

> Vineyard:  I don't trust him, Your Honor.
> The Court:  Then don't ask him anything, but he's going to sit there anyway.
> Vineyard:  I'll file a motion.
> The Court:  Pardon me?
> Vineyard:  I'm in the process of filing a motion to get him off anyway.  I've been talking to –
> The Court:  From what I'm seeing right now –
> Vineyard:  I don't trust him.
> The Court:  I'm going to grant it.  Okay.  Fine.  I'll let you represent yourself.

*Id.* at 15-16.  At no time during the hearing regarding Vineyard's "oral request to represent himself" did Vineyard ever request substitute counsel.  *See id.* at 1-33.  Therefore, Vineyard's appellate counsel's performance was not deficient for failing to raise this meritless claim on direct appeal.

Vineyard cannot satisfy the *Strickland* test, and Vineyard has not established the OCCA's rejection of this claim was unreasonable. Vineyard's request for habeas corpus relief on this claim is denied.

### vi. Admission of Unauthenticated Phone Calls (Ground 13)

Concerning Ground Thirteen (13), Vineyard alleges it was error for the jury to hear "unauthenticated phone conversations[.]" Dkt. No. 1 at 13. Specifically, Vineyard claims the admission of this evidence was error because "[a]lleged victim was never questioned about any phone conversations in preliminary hearing she had with the petitioner. Identification was never confirmed or if phone number belonged to the alleged victim at trial because the alleged victim was not present." *Id.* Vineyard's position lacks merit.

Proper identification of Alexander was not needed to properly authenticate the phone calls as evidence against Vineyard. The phone calls were introduced to prove Vineyard implicated himself in the crime. And there was sufficient evidence introduced to properly authenticate the phone calls.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be." Okla. Stat. tit. 12, § 2901(A). "Authentication may be proved by direct or circumstantial evidence, and is sufficient if evidence supports a finding that the matter in question is what its proponent claims it to be." *Hooper v. State*, 947 P.2d 1090, 1102 (Okla. Crim. App. 1997); *see also United States v. Pebley*, 846 F. App'x 671, 673 (10th Cir. 2021) ("In the context of phone recordings, we have adopted a flexible approach when determining whether the proponent of the evidence has laid sufficient foundation." (internal quotations and citations omitted)).

At trial, the state presented evidence from Mark Lopez regarding the Tulsa County Jail's phone system for inmate calls, how calls are recorded, how calls are saved, how the calls can be accessed by individuals with the correct credentials and the measures in place to prevent calls from being tampered with.  Dkt. No. 14-7 at 51-56.  Jay Long ("Long"), a Tulsa County District Attorney's Office Investigator, testified regarding his duties in obtaining recorded phone calls from inmates at the Tulsa County Jail.  *Id.* at 58-60.  He explained how each inmate has a DLM number, an identifying number that is unique to each defendant.  *Id.* at 60.  Long requested the jail calls from Vineyard's DLM number during a specific date range.  *Id.* at 61-63.  In the calls published to the jury, numerous times one caller is referred to as Alfonzo and another is referred to as Tiffany. *See id.* at 80 ("Don't let them take my daughter, Tiffany."), 81 ("And you know this, Tiffany, I love you."), 82 ("Like you always tell me, Alfonzo …."), 83 ("He in there too Alfonzo"), 84 ("Alfonzo, these people, these people, yeah, they want to put you away.").  The phone calls were appropriately authenticated.  Therefore, Vineyard's appellate counsel's failure to raise this issue on direct appeal was not deficient as "it entirely lacks any factual basis."  Dkt. No. 10-7 at 19.  Therefore, Vineyard cannot satisfy the *Strickland* requirements, and the OCCA's rejection of this claim was not unreasonable.  Vineyard's request for habeas corpus relief on this claim is denied.

### vii.    Vindictive Prosecution (Ground 14)

Next, Vineyard contends the prosecution was "vindictive" when it added a charge and increased the severity in another after he "asserted his protected right[.]"  Dkt. No. 1 at 13.  In his application for post-conviction relief, Vineyard explained:

> Prosecutor added a charge of Domestic Assault and Battery, 2nd Offense after Preliminary Hearing and also amended and [sic.] Attempted 1st Degree that had been dismissed earlier that year to 1st Degree Burglary, exposing Defendant to more severe criminal penalties after his refusal to plead guilty, invoking his right to go to Trial, and proceeding with Motion to Dismiss charges.

34

Dkt. No. 10-5 at 9.  The district court and the OCCA rejected this claim.  *See* Dkt. Nos. 10-7 at 20-21 and 10-10 at 4-5.

"To establish a claim of prosecutorial vindictiveness, the defendant must prove either:  (1) actual vindictiveness; or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997). "When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution." *Id.* at 1245 (internal quotation and citation omitted). "The inquiry is whether, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights." *Id.* (internal quotation and citation omitted). "However, the Supreme Court has generally rejected the presumption of prosecutorial vindictiveness in the pretrial context." *Id.* "The Due Process Clause of the Fourteenth Amendment is not violated when a state prosecutor carries out a threat made during plea negotiations to have the accused reindicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to the offense with which he was originally charged." *Bordenkircher v. Hayes*, 434 U.S. 357, 357 (1978). "In the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Lampley,* 127 F.3d at 1245 (internal quotation and citation omitted).

The record establishes, prior to the preliminary hearings, the state outlined its pending plea offer.  Dkt. No. 14-1 at 3-5 and Dkt. No. 14-2 at 3-7.  The state was forthright that it would alter and/or add charges if Vineyard rejected the pending plea offer and exercised his right to have a preliminary hearing.  *See e.g.* Dkt. No. 14-1 at 5 and Dkt. No. 14-2 at 4-5.  The evidence at the

preliminary hearing revealed Vineyard did not just attempt to burglarize Alexander's apartment but did in fact enter her apartment without her consent by placing his arm through her window and grabbing her.  Dkt. No. 14-1 at 13-14.  Therefore, the evidence supported the state's request to amend the charge from attempted burglary, 1st degree to Burglary, 1st degree.  Okla. Stat. tit. 22, § 264.  Alexander also testified at the preliminary hearing regarding her relationship with Vineyard and that Vineyard grabbed her.  Dkt. No. 14-1 at 7, 14.  Therefore, at the conclusion of the preliminary hearing, the state sought to have the Information conformed to the evidence presented at the hearing.  *Id.* at 24-26.  The preliminary hearing magistrate concluded there was probable cause to support the state's requested amendments.  *Id.* at 27.

Vineyard has failed to demonstrate he was *not* free to accept or reject the prosecution's plea offer.  Nor has Vineyard shown there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights.  Instead, the record reveals the natural "give and take" of pretrial plea bargaining.  Given the record does not support Vineyard's underlying prosecutorial vindictiveness contention, his appellate counsel was not ineffective for failing to raise this issue on direct appeal.  Vineyard cannot show his counsel's performance was deficient for failing to raise a meritless claim nor can he establish the result of his direct appeal would have been different had this claim been raised.  *Strickland*, 466 U.S. at 687.  It follows, Vineyard has failed to establish the OCCA's adjudication of this claim was unreasonable.  Vineyard's request for habeas corpus relief on this claim is denied.

## C.  Prosecutorial Misconduct Claim (Ground 15)

Lastly, Vineyard claims his appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim.  Dkt. No. 1 at 14.  Vineyard alleges, "[p]rosecutor threatened to

36

detain and criminally prosecute and have alleged victims [sic.] children taken if she refused to appear at [Vineyard's] preliminary hearing and perjure herself regarding [Vineyard]." *Id.* In his application for post-conviction relief, Vineyard only alleged prosecutorial misconduct, not ineffective assistance of appellate counsel. Dkt. No. 10-5 at 10. The district court denied this claim finding it was procedurally barred because it could have been raised on direct appeal but was not. Dkt. No. 10-7 at 4-5. When Vineyard appealed the district court's denial of his application for post-conviction relief, he re-cast the claim alleging "appellate counsel ineffective for not raising the claim of prosecutorial misconduct." Dkt. No. 10-9 at 1. The OCCA held Vineyard's ineffective assistance of appellate counsel claim based upon failing to raise the prosecutorial misconduct claim was not presented to the district court and was "not properly before [the OCCA]." Dkt. No. 10-10 at 2 (citing Rule 5.2(A), *Rules of Oklahoma Court of Criminal Appeals,* Tit. 22, Ch. 18, App.).

The Court concludes Ground Fifteen (15) is procedurally barred. The Tenth Circuit has previously affirmed a district court's finding that Rule 5.2(A) is an independent and adequate state ground. *See Brown v. Allbaugh*, 678 F. App'x 638, 642 (10th Cir. 2017) (Petitioner "gives us no reason to doubt the district court's conclusion that … a state procedural bar based on Rule 5.2(A) precludes federal habeas review."). Guided by the Tenth Circuit's prior reasoning, this Court concludes Rule 5.2(A) is an independent and adequate state ground barring review here. Vineyard does not demonstrate the requisite cause to have this Court review a procedurally barred claim. *Grant,* 886 F.3d at 892. Therefore, Vineyard has not overcome the procedural bar, and Vineyard's request for habeas corpus relief on this claim is denied.

## CONCLUSION

The Court finds and concludes that Vineyard has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254. The Court therefore denies the Petition as to all

fifteen (15) claims raised therein.  The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Vineyard's constitutional claims or its determination that some claims, in whole or in part, are procedurally barred.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that the Petition [Dkt. No. 1] is DENIED; a certificate of appealability is DENIED; and a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the substitution of Carrie Bridges, Warden, in place of Scott Nunn as party Respondent.

Dated this 29th day of May, 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE